Joe W. BROWN, Appellant,

v.

Louis SULLIVAN, Secretary of Health and Human Services, Appellee.

No. 89–2322.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1989.
Decided April 27, 1990.

Harrison Don King, Clayton, Mo., for appellant.

Edwin B. Brzezinski, St. Louis, Mo., for appellee.

Before MAGILL and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Joe W. Brown appeals from the order of the district court affirming the final decision of the Secretary of Health and Human

Services denying Brown's application for Social Security disability insurance benefits. We reverse and remand.

## BACKGROUND

Brown, 45, has a tenth-grade education and past work experience as a raw material handler and a concrete mixer. He alleges disability based on diabetes, a back injury, knee and leg pain and swelling, hearing loss, high blood pressure, breathing problems, and exposure to the herbicide Agent Orange in Vietnam. Brown is either six feet tall or six feet, three inches tall and weighed 315 pounds at the time of his administrative hearing. Brown's insured status for Social Security disability insurance benefits expired on June 30, 1983. He currently receives Supplemental Security Income (SSI) benefits.

Brown's application for disability insurance benefits was denied initially and on reconsideration. He received a hearing before an administrative law judge (ALJ). Brown first injured his back in a jeep accident in Vietnam in 1966 and reinjured it at work in 1973. Brown testified at the hearing that he began to have severe pain in his back and left leg in 1982. Since then, he has taken Tylenol 3 and whirlpool treatments for the pain. He has taken insulin daily for his diabetes since 1974. Brown stated that he cannot walk a city block without stopping, that he can sit or stand for only short periods of time, and that his knees occasionally give out on him. He cannot lift or carry objects because of an inability to grip. He has experienced shortness of breath and noisy breathing since 1976, possibly as a result of exposure to Agent Orange. Brown testified that he has difficulty getting out of bed, must use a shower chair to bathe, and cannot perform yard work as he once did. His only activity outside his house is occasional attendance at church services.

The ALJ determined that Brown's impairments prior to the expiration of his insured status were diabetes and obesity. The ALJ concluded that Brown's complaints of pain were not credible and that he had remained capable of performing his past work as a material handler through June 30, 1983. Consequently, the ALJ found that Brown was not disabled before that date. The ALJ's decision became the final decision of the Secretary, and Brown filed an action for judicial review. On cross-motions for summary judgment, the district court affirmed the Secretary's decision.

## DISCUSSION

On appeal, Brown argues that substantial evidence does not support the Secretary's decision that he was not disabled before June 30, 1983, the date through which he was eligible for disability insurance benefits. We find that the ALJ improperly discredited Brown's complaints of pain, failed to consider the combined effects of his impairments, and erroneously concluded that Brown could perform his past work as a raw material handler through June 30, 1983.

### I.

The ALJ found Brown's allegations of severe back and leg pain not to be credible because they were inconsistent with the level of medical treatment Brown received. An ALJ may discredit subjective complaints of pain only if they are inconsistent with the record as a whole. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (order), *supplemented*, 751 F.2d 943 (8th Cir.1984), *vacated*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974, *adhered to on remand*, 804 F.2d 456 (8th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). Office notes from James Knight, M.D., Brown's treating physician, specifically cite complaints of hip and leg pain or show refill orders for pain medication in seven out of nine visits Brown made from June 2, 1982 through June 30, 1983. The notes also reflect Dr. Knight's opinion that Brown required hospitalization. Brown apparently had no hospitalization insurance at the time, but was admitted to the emergency room at St. Louis County Hospital in February and May 1982 complaining of severe pain in his left leg and buttock and an inability to stand on his left leg. The re-

port from May 1982 indicates that Brown was taken to the emergency room in an ambulance and reported that his pain had been so severe that he was unable to get out of bed. After qualifying for Medicaid, Brown was admitted to CMC Hospital in St. Louis in July 1982. Brown was hospitalized for eight days and received a final diagnosis of osteoarthritis. The medical records indicate that Brown continued to take Tylenol 3 through the date on which his eligibility for disability insurance benefits expired. Radiologic examinations performed before and after Brown's eligibility expired revealed slight lumbar scoliosis, mild to moderate degenerative changes in the lumbar spine and knees, and a chronic deformity of the right femoral neck.

Our review of the medical record persuades us that Brown's allegations of pain are consistent with the level of medical treatment he sought and could afford from the time the pain started in 1982 through the expiration of his eligibility the following year. Cf. Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir.1984) (a lack of financial resources can be an independent ground justifying failure to follow medical treatment prescribed to remedy a disabling impairment). The ALJ cited no evidence of Brown's daily activities, lack of symptoms, or employment record that contradicted his allegations of pain. Because Brown's testimony at the hearing is consistent with the record as a whole, the ALJ erred in discrediting Brown's allegations of pain.

### II.

■ We also believe the ALJ erroneously failed to consider the combined effect of Brown's impairments. In determining whether a claimant is disabled, the Secretary must consider the combined effect of all the claimant's impairments without regard to whether any single impairment is of disabling severity. 42 U.S.C. § 423(d)(2)(C) (Supp. V 1987); Anderson v. Heckler, 805 F.2d 801, 805 (8th Cir.1986).

■ The medical record indicates that prior to the expiration of his insured status, Brown suffered from diabetes, hypertension, obesity, leg and back pain, and breathing problems. The records contain a discrepancy as to Brown's height; he is either six feet tall or six feet, three inches tall. His weight fluctuated between 320 and 360 pounds from 1976 to 1986. Under the Social Security Guidelines Listing of Impairments, a male six feet tall weighing 336 pounds or six feet, three inches tall weighing 364 pounds is disabled within the meaning of the Social Security Act if any of the following conditions exist:

A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine; or

B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; or

.        .        .        .        .

E. Respiratory disease with total forced vital capacity equal to or less than 2.0 L. or a level of hypoxemia at rest equal to or less than the values specified in Table III–A or III–B or III–C.

20 C.F.R. Part 404, Subpart P, App. 1 § 10.10 (1989).

The ALJ's decision acknowledged Brown's obesity, but made no reference to his hypertension other than to note that a consulting physician who examined Brown in 1986 observed that Brown's hypertension and diabetes would benefit from control of his weight. The magistrate to whom the district court referred Brown's case found that Brown did not meet the requirements of section 10.10 of the Listing of Impairments because his diastolic pressure had not persistently exceeded 100 mm. and his chronic obstructive pulmonary disease had not reduced his forced vital capacity to the values required in the Listing. The magistrate further concluded that Brown's obesity was not disabling because Brown had been advised repeatedly to lose weight and had done so successfully on occasion. The magistrate found "no evidence in the record suggesting that plaintiff cannot control his weight."

We believe the ALJ and the magistrate erred in ignoring or discounting the severity of Brown's obesity, hypertension, chronic pulmonary disease, and degenerative changes in his spine, hip, and knee. From May 1981 through May 1983, Brown's blood pressure readings were 148/100, 154/96, 156/114, 160/100, 150/90, 180/90, and 130/90. The record reflects that Brown took medication to control hypertension throughout this period. Although Brown's diastolic pressure did not persistently exceed 100 mm. Hg, and thus was not disabling under the Listing of Impairments, his blood pressure was nonetheless persistently high despite his medication. *See Dorland's Illustrated Medical Dictionary* 744 (25th ed. 1974) (suggested criterion for persistently high blood pressure is 140/90).

■ The magistrate correctly noted that Brown had been advised repeatedly to lose weight. The record indicates that Brown was placed on low-calorie diets several times and lost from five to fifteen pounds. He also walked frequently and worked out at a gym prior to the onset of his severe back and leg pain in 1982. His weight at the time of his administrative hearing was 315 pounds. The magistrate concluded from this evidence that Brown had the ability to control his weight and had failed to follow prescribed diets without good reason. This conclusion amounts to conjecture and is not supported by substantial evidence. The medical reports show that Brown attempted to follow his doctors' instructions to lose weight through diet and exercise. The record also indicates, however, that since 1982, Brown's pain and breathing problems have restricted him from all but the most sedentary activities. Under these circumstances, the magistrate was not entitled to presume that Brown's failure to lose weight was willful. *See Stone v. Harris,* 657 F.2d 210, 212 (8th Cir.1981) (previous weight loss is not substantial evidence of a present ability to lose weight). The proper question is not whether Brown's obesity is clinically remediable, but whether it is reasonably remediable by Brown. *See id.*

The magistrate also correctly noted that Brown's obstructive pulmonary disease had not reduced his forced vital capacity to a level at which that impairment, combined with Brown's obesity, would render Brown disabled under the Listing of Impairments. Neither the magistrate nor the ALJ, however, considered whether Brown's obesity, hypertension, and chronic obstructive pulmonary disease in combination were equivalent to section 10.10 or were otherwise disabling. On remand, the Secretary should consider the combined effect of these impairments as they existed on June 30, 1983, together with the documented degenerative changes in Brown's spine, hip, and knee, and Brown's credible allegations of pain.

### III.

■ Finally, we believe the ALJ erred in concluding that Brown remained capable of performing his past work as a raw material handler through June 30, 1983. The record indicates that Brown's job as a raw material handler, which he left in December 1977, involved frequent or constant standing, walking, and bending; frequent lifting of up to fifty pounds; and occasional lifting of up to 120 pounds. Brown testified that since 1982, he has been able to stand for only short intervals and to walk only short distances. He stated that he has difficulty lifting and carrying objects because of an inability to grip. Moreover, residual functional capacity assessments performed for the Social Security Administration by Michael J. O'Day, D.O., and W. Bruce Donnelly, M.D., indicate that through June 30, 1983, Brown could lift a maximum of fifty pounds occasionally and could frequently lift no more than twenty-five pounds. Consequently, the ALJ erred in finding that Brown could perform his past work as a raw material handler through June 30, 1983.

■ Because the record establishes that Brown could not return to his past work, the ALJ should have shifted the burden of proof to the Secretary to show the existence of jobs in substantial numbers in the national economy which Brown could

have performed as of June 30, 1983. *See Butler v. Bowen*, 865 F.2d 173, 174 (8th Cir.1989). The incorrect allocation of the burden of proof based on an erroneous finding that the claimant can return to his prior work requires a remand for further proceedings. *Jeffery v. Secretary of Health & Human Servs.*, 849 F.2d 1129, 1133 (8th Cir.1988); *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir.1987). Because Brown's residual functional capacity is diminished by both exertional and nonexertional impairments, the Secretary must produce expert vocational testimony or other similar evidence on remand to establish the existence of jobs in the national economy for an individual with Brown's characteristics at the time Brown's insured status expired. *See Tucker v. Heckler*, 776 F.2d 793, 796 (8th Cir.1985).

## CONCLUSION

We reverse the order of the district court granting summary judgment to the Secretary and remand the case for further proceedings consistent with this opinion.